# Richmond.

## The Chesapeake and Ohio Railway Company v. Allen.

### November 15, 1923.

1. Railroads—*Crossings—Frightening Horses—Reputation of Horse.*—In an action for injuries arising out of the frightening of a horse by a train the lower court sustained an objection to a question asking the witness to state the horse's reputation, on the ground that it could not be proved by the reputation whether the horse was scary or not.

   *Held:* That as it appeared from the testimony that the sounding of the whistle in the manner shown was sufficient to frighten even a horse of ordinary gentleness, the reputation of the horse was immaterial.

2. Crossings—*Frightening Horses—Statutory Signals.*—In an action for injuries arising out of the frightening of a horse by a train it was shown that the signal that frightened the horse was given between a county road crossing and a private road crossing. The court instructed the jury that the statute did not require a crossing signal by the engineer between the county road crossing and the private road crossing.

   *Held:* That it was proper, or certainly not to the injury of the defendant, to instruct the jury as to what crossing the statute requiring signals to be given applied, and to what it did not apply.

3. Crossings—*Frightening Horses—Instructions—Signals—Unusual and Unreasonable Manner—Prudent and Reasonably Safe Operation of Train.*—In an action for injuries arising out of the frightening of a horse by a train the court instructed the jury that if they believed from the evidence that the blowing of the whistle which frightened the horse was done in an unusual and unreasonable manner, or was not reasonably requisite for the prudent and reasonably safe operation of the train, and caused the injury complained of, they should find a verdict for the plaintiff.

   *Held:* No error.

4. Instructions—*Reasonable Conduct—Reasonable Prudence.*—Courts constantly have to refer to juries the question of what is reasonable conduct, or reasonable prudence, under all the circumstances of the case, with no other guide than their own judgment and conclusion as reasonable men.

5. Horses—*Frightening Horses—Instructions.*—In an action for injuries arising out of the frightening of a horse by a train an instruction which, though not accurately expressed, when read in connection with what immediately preceded it, told the jury that if they believed it was reasonably necessary to sound the whistle for the prudent and reasonably safe operation of the train, or for the reasonable safety of persons near the track, and that the whistle was sounded in a reasonable manner for these purposes, the defendant was not liable, could not have misled the jury.

6. Crossings—*Frightening Horses—Instructions—Reasonably Careful Man.*—In an action for injuries arising out of the frightening of a horse by a train the defendant asked an instruction to the effect that plaintiff could not recover unless he proved that defendant's engineer blew the whistle where and when a "reasonably careful engineer" would not have blown it. The court altered the instruction by striking out the words a "reasonably careful engineer" and substituting "a reasonably careful man in his situation."

   *Held:* No error, as neither skill nor experience was required to determine the proper action to be taken by the engineer.

7. Horses—*Frightening Horses—Evidence Sufficient to Support Verdict for Plaintiff—Case at Bar.*—In an action for injuries arising out of the frightening of a horse by a train the jury might have found that the whistle on a train going east (as the train in question was going) was never sounded at the point of the accident; that there was no necessity for, or propriety in, sounding the whistle at that point; that it was sounded merely to frighten spectators who were sitting near the track whose discomfort the engineer was enjoying, and that such sounding of the whistle was the proximate cause of the injury complained of.

   *Held:* That the evidence was sufficient to support a verdict for the plaintiff.

Error to a judgment of the Circuit Court of Bath county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*J. M. Perry,* for the plaintiff in error.

*Geo. A. Revercomb* and *H. H. Byrd,* for the defendant in error.

Burks, J., delivered the opinion of the court.

This is an action to recover damages for a personal injury inflicted upon the plaintiff as a result of the alleged negligence of the servants of the defendant railway company.

At the point of the accident the railroad and the public road run practically parallel with each other and are separated only by twenty-five or thirty feet. The public road varies in width from ten to fourteen feet, runs along the base of a mountain, and is four or five feet above the grade of the railroad. A private road leading from the public road crosses the railroad a short distance east of the scene of the accident, and there is a trestle in the railroad, which is often used by foot passengers, a short distance east of this private crossing. The public road crosses the railroad about 390 feet west of the scene of the accident. The distance between the public crossing and the private crossing is about 348 feet, or about 150 yards. Just opposite the scene of the accident there is a tennis court on the south side of the railroad for the use of the colored employees of the Hot Springs Hotel Company. It is a short distance from the railroad, and there are four or five piles of railroad ties between the tennis court and the railroad. On the day of the accident, the plaintiff's brother invited the plaintiff to ride home with him in his one-horse wagon, which invitation was accepted. At the point where he got into the wagon there is a curve in the public road and the view of the railroad is obscured by the freight depot of defendant. As they came in view of the railroad, a freight train going east towards Hot Springs was approaching up a heavy grade. They continued driving west, meeting the train, and the horse showed no signs of fright. When the cab of the engine was directly

opposite to them, and only thirty feet from them, the engineer began sounding the whistle of the engine. At the first sound of the whistle the horse shied to the right against the mountain side and as the whistling continued the horse broke into a run, the wagon wheel struck a rock and the plaintiff was thrown out, sustaining a compound fracture of his right ankle. He was confined in a hospital for three months, and suffered great pain therefrom, and is not able to perform work as formerly. There was a verdict and judgment for the plaintiff for $2,500.00.

The horse that was attached to the wagon was nine years old at the time of the accident. The defendant proved that when he was three years old, and hardly bridle-wise, he had run away two or three times. The defendant then offered a witness to prove that the horse was "a wild horse, a run-away, and liable to run upon the least occasion." The witness testified that he had known the horse practically ever since he was a colt, had seen him at work, had never seen him scared, but that he did not know anything about the character of the horse except what he had heard other people say. Counsel for the defendant then asked the witness to "state what that horse's reputation was?" Counsel for the plaintiff objected to the question, and the court sustained the objection on the ground "that you cannot prove by reputation whether a horse is scary or not," but said that the fact might be proved by any witness who knew it. To this ruling of the court the defendant excepted, and this constitutes the first assignment of error.

[1] We deem it unnecessary to say more than that the sounding of the whistle, in the manner shown by the testimony, within thirty feet of the horse was sufficient to frighten even a horse of ordinary gentleness, and the reputation of the horse was immaterial.

After several instructions tendered by the plaintiff had been refused, the court gave in lieu thereof, of its own motion, the following instruction:

"The court instructs the jury that the statute does not require the railway company to give a crossing signal by engine whistle at any point between the county road crossing and the private road crossing near the freight depot; and if the jury believe, from a preponderance of the evidence, that the blowing of the whistle between those points was done in an unusual and unreasonable manner, or was not reasonably requisite for the prudent and reasonably safe operation of the train, and that the blowing of the whistle between said points, in the manner, or under the conditions aforesaid, caused W. M. Allen's horse to run off and plaintiff to be thrown out of the vehicle and injured, and damaged, then the railway company is liable for damages thus sustained by the plaintiff.

"But if, under all the evidence, the jury believe that it was reasonably requisite for the prudent and reasonably safe operation of the train, or for the reasonable safety of persons near the track, to blow the whistle between the points aforesaid, and that the whistle was sounded in a reasonable manner for these purposes, and the horse was thereby frightened and ran off, then the railway company is not liable for any injury resulting to the plaintiff therefrom."

The defendant excepted to the giving of this instruction, and the ruling of the trial court constitutes the second assignment of error. The objections to the instruction are (1) that the statute as to crossing signals was foreign to any issue made by the pleadings; (2) that there was no evidence as to what was unusual and customary, and the "instruction leaves it to the fancy of the jury at its pleasure to determine whether the

signal was given 'in an unusual and unreasonable manner' and to impose liability accordingly;'' (3) that "even if the jury failed to conclude that the whistle was blown in an 'unusual and unreasonable manner,' the first branch of the instruction imposed liability upon the plaintiff if the jury believed that the signal 'was not reasonably requisite for the prudent and reasonably safe operation of the train;''' and (4) under the terms of the instruction the defendant can in no way escape liability. The plaintiff may recover, under the first branch of the instruction, if the jury believe that the whistle was blown in an unreasonable and unusual manner, or if they believe that the signal was not reasonably requisite for the prudent and reasonably safe operation of the train. But in order that there may be no liability upon the defendant the second branch of the instruction requires the concurrence of three things: (a) that the whistle must have been sounded in a reasonable manner; (b) that the signal must have been reasonably requisite for the prudent and reasonably safe operation of the train; and (c) that it also must have been 'for reasonable safety of persons near the track.'

"A railroad company may sound its whistle either to warn persons likely to come on its tracks, or to direct its employees in the operation of its trains. The two purposes are entirely distinct, and either is permissible and lawful. The defendant here, however, is required to give the signal for the joint purpose, or not at all."

The instruction was given in two paragraphs. The first in effect directing a finding for the plaintiff, and the second a finding for the defendant. The first three objections are directed to the first paragraph and the fourth to the second paragraph. The instruction, of course, is to be read in the light of the evidence, and

was applicable to the train referred to in the testimony which was a train going east after it had passed over the public crossing.

[2-5] It was proper, or certainly not to the injury of the defendant, to instruct the jury to what crossing the statute requiring signals to be given applied, and to what it did not apply. The second objection is without merit. Courts constantly have to refer to juries the question of what is reasonable conduct, or reasonable prudence, under all the circumstances of the case, with no other guide than their own judgment and conclusion as reasonable men. The defendant, in instruction X asked by it, submitted a similar question to the jury. The answer to the third objection is much the same as that to the second. The reasonably safe operation of the train referred to must, in view of the testimony, be held to mean safety of third persons and not operatives on the train. The instruction plainly referred to the improper and unnecessary blowing of the whistle as it affected the plaintiff. The fourth objection is one by the defendant to an instruction directing a verdict in its own favor. This branch of the instruction is not accurately expressed, but it is quite plain that it was intended to be put in antithesis to that which had gone before and to say to the jury, if they believed it was reasonably necessary to sound the whistle, for either of the purposes mentioned and it was sounded in a reasonable manner, then the company was not liable. We do not think the jury could have been misled by it. The instruction correctly stated the law as laid down in *Southern Ry. Co.* v. *Torian*, 95 Va. 453, 28 S. E. 569, and *Petersburg R. Co.* v. *Hite*, 81 Va. 767. If the view here suggested by counsel for the defendant had been taken by counsel for the plaintiff in the trial court, it could, and would doubtless have been, corrected by the

court, if not of its own accord, upon request of the defendant. Upon a careful examination and consideration of the instruction in the light of the argument of counsel, both oral and on the brief, we are satisfied that the defendant company was not prejudiced thereby.

The next assignment of error relates to instruction X tendered by the defendant, which the court changed and gave in its altered form as instruction No. 4. The instruction as tendered was as follows:

[6] "The court instructs the jury that the mere fact that the plaintiff, Allen, was injured through the Allen horse being frightened by the defendant's engine whistling, does not entitle Allen to recover any damages in this case. The plaintiff can recover nothing unless he has proved by the greater weight of the evidence, and to the jury's satisfaction, that the defendant's engineer blew the whistle where and when and as a *reasonably careful engineer* would not have blown the whistle, if operating his engine in a reasonably careful manner."

The alteration consisted in striking out the words in italics, and substituting therefor the words "*a reasonably careful man in his situation.*" Exception was taken to the alteration. We would probably have been satisfied with the instruction as tendered, but a careful consideration of it satisfies us that the trial court committed no error in making the alteration. It is criticized on the ground that "the test of negligence in such a case is the conduct of the 'reasonably careful engineer' not the conduct of the average man of ordinary prudence, regardless of his skill, experience or knowledge of driving locomotive engines." It is further said:

"The test of reasonable care in a surgical operation is not the conduct of a 'reasonably careful man' in the surgeon's situation; it is the conduct of the ordinarily careful surgeon. In an accident occasioned by the al-

leged misuse of machinery or tools, the test of due care is the care to be expected of the reasonably careful mechanic in that line of work—not of a 'reasonably careful man in his situation.' Whether an engineer exercised reasonable care in applying or not applying his brakes when his engine was about to go into a collision, or in letting water into his boiler during a run, is to be determined by whether a reasonably careful locomotive engineer—not a 'reasonably careful man in his situation'—would have applied the brakes or would have fed water into his boiler when and as the engineer concerned did; only experience and skill can determine for the man operating the engine whether it is safe under given conditions to apply brakes, or to let water into a boiler."

But neither skill nor experience was required to determine the proper action to be taken by the engineer. The question involved was: "Was it reasonably necessary or prudent for the engineer to sound the whistle when, where and under the circumstances he sounded it, and this was to be determined by what would have been the conduct of a reasonably prudent man under like circumstances. If we paraphrase the instruction as given it would read: "The plaintiff can recover nothing unless he has proved, by the greater weight of evidence, and to the satisfaction of the jury, that defendant's engineer, while operating his engine and train in a reasonably careful manner, blew the whistle where, when and under such circumstances as a reasonably careful man in his situation would not have blown the whistle." We are unable to see how the defendant could have been injured by the alteration. The argument of the counsel for defendant is sound enough in cases involving the exercise of skill and experience, but has no application where, as here, no such question is involved.

[7] The trial court committed no error in refusing to set aside the verdict on the ground that it was contrary to the evidence and without evidence to support it. Viewed from the standpoint of a demurrer to the evidence by the defendant, the jury might have found that whistles on trains going east at the point of the accident were never sounded at that point, that there was no necessity for or propriety in sounding the whistle at that point, that it was sounded merely to frighten spectators who were sitting on the tie piles watching a game of tennis, whose discomfort the engineer was enjoying, and that such sounding of the whistle was the proximate cause of the injury complained of.

The nature and extent of the plaintiff's injuries were such that it is unnecessary to discuss the assignment of error that the damages allowed are excessive. *Chesapeake & Ohio Ry. Co.* v. *Fortune*, 107 Va. 412, 59 S. E. 1095.

The judgment of the trial court will be affirmed.

*Affirmed.*