## Staunton

MARGARET ANN THRESS, AN INFANT v. W. F. HACKLER.

September 12, 1930.

Absent, Holt and Gregory, JJ.

*A. B. Hunt* and *T. W. Messick*, for the plaintiff in error.

*H. M. Fox*, for the defendant in error.

EPES, J., delivered the opinion of the court.

This is an action brought in the Hustings Court of the city of Roanoke by Margaret Ann Thress, a nine-year old child, against W. F. Hackler to recover damages for personal injuries received by her on October 8, 1927, when she was struck by an automobile being operated by W. F. Hackler.

For convenience the parties will be hereafter referred to as plaintiff and defendant as they appeared in the trial court.

The jury found a verdict in favor of the plaintiff against the defendant for $5,000. On motion of the defendant the court set aside the verdict of the jury on the ground that the evidence fails to show that the defendant was guilty of any act of negligence; and entered final judgment for the defendant, dismissing the action. To this judgment a writ of error has been granted to the plaintiff.

There is but one question here presented for determination: Is there sufficient evidence to support a verdict finding

the defendant guilty of negligence which was the proximate cause of the injury to the plaintiff?

The notice of motion for judgment alleges that the defendant was guilty of negligence in that he failed to keep a proper lookout, and also in that he was driving at an unreasonable and improper speed, having due regard to traffic on and the surface and width of the street and the surrounding conditions. There are other allegations of negligence, but it is unnecessary to notice them.

The plaintiff was struck by the automobile driven by the defendant on Grandin road in the city of Roanoke, at a point which is a short distance north of where Grandin road is intersected by Otterview avenue on the east and Maiden lane on the west.

Grandin road runs almost north and south, and going from south to north it has a descending grade, the fall being about four and one-half feet to the 100 feet. North of said intersection it is a straight street thirty-six feet wide between curb lines. South of said intersection it is thirty-eight feet wide between curb lines, and curves slightly to the westward on approximately a seven degree curve, which begins about the center of said intersection. It is smooth paved for its full width between curb lines, and a single-track street car line runs along the center of it. North of said intersection the east rail of this track is fifteen and one-half feet from the east curb line, and south of said intersection it is sixteen and one-half feet from the east curb line.

Otterview avenue, which is thirty feet wide between curb lines, extends eastward from Grandin road. Maiden lane, which is twenty-six feet wide between curb lines, extends westward from Grandin road. While they intersect Grandin road opposite each other and form one east and west thoroughfare, they do not intersect it at right angles, nor do their curb lines intersect the curb lines of

Grandin road exactly opposite each other. The north curb line of Otterview avenue makes an angle of approximately seventy-eight degrees with the east curb line of Grandin road, and the north curb line of Maiden lane an angle of approximately 112 degrees with the west curb line of Grandin road. The north curb line of Maiden lane intersects Grandin road approximately twelve feet further north than does the north curb line of Otterview avenue, but the south curb line of Maiden lane intersects Grandin road approximately sixteen feet further north than does the south curb line of Otterview avenue.

Both Maiden lane and Otterview avenue have concrete sidewalks approximately four feet wide on each side; but the center line of the concrete walk on the north side of Maiden lane intersects Grandin road approximately eighteen feet further north than does the center line of the concrete walk on the north side of Otterview avenue.

Clore's Pharmacy occupies the southeast corner of Grandin road and Otterview avenue. Its side wall is approximately twenty-two feet from the south curb line of Otterview avenue; and it fronts approximately twenty feet on Grandin road.

At the time of the accident George Hopper was standing in front of Clore's Pharmacy. H. O. Weaver was sitting in an automobile, headed north, which was parked on the east side of Grandin road in front of Clore's Pharmacy, with its wheels almost against the curb. A. E. Fralin was sitting in his automobile, headed east, which was standing in Maiden lane near its intersection with Grandin road, where he had stopped to let the street car from which the plaintiff had alighted pass before proceeding on across Grandin road. Mrs. Wingfield and her husband, who lived on the corner of Grandin road and Maiden lane, were sitting on their porch.

About four o'clock in the afternoon on which she was injured the plaintiff, then nine years and eight months old,

and her sister, Virginia Thress, eleven years old, were passengers on a south-bound street car proceeding along Grandin road. When the street car reached the intersection of Maiden lane it stopped to discharge passengers.

The defendant introduced the motorman and other witnesses who testify that the street car was stopped with its front entrance opposite the sidewalk on the north side of Maiden lane. But the plaintiff's evidence fixes the street car, which was thirty-nine feet long, as having stopped with its rear entrance approximately opposite, or a few feet north of, the sidewalk on the north side of Maiden lane, with its front end extending into Maiden lane. The plaintiff's witness, Fralin, testifies positively to this effect; and this accords with the testimony of Virginia Thress that had the plaintiff not been struck she would have come to the curb about opposite Mr. Gray's walkway, which is approximately thirty feet north of the concrete sidewalk on Otterview avenue. The street car stood where it had stopped until after the plaintiff was struck by Mr. Hackler's automobile.

When the street car stopped the plaintiff, Margaret Thress, and her sister, Virginia, got off the street car through its rear door on the western side. A drizzling rain was falling. Virginia got off first and went towards the western curb of Grandin road. The plaintiff did not follow her sister, but went around the rear end of the street car and towards the eastern curb of Grandin road. When Virginia had gotten almost to the western curb line, she looked and saw that the plaintiff was not following her, and turned and followed the plaintiff around the rear of the street car.

The street car was eight feet wide, and the distance between the east side of the street car and the east curb of Grandin road was fourteen feet.

Before they reached the curb line both the plaintiff and Virginia were struck by Mr. Hackler's automobile which

was proceeding north on Grandin road. The plaintiff was in a few feet of the curb when struck, and was struck by the right front fender of the automobile. Virginia had just stepped out from behind the street car and was struck by the left side of. the front of the automobile.

The testimony of the plaintiff and her older sister, Virginia, is very clear and distinct for children of their ages; and bears no internal evidence of lack of verity.

The plaintiff testified that before crossing the roadway she stopped and looked out from behind the rear of the street car; that as far south as she could see around the curve in Grandin road there was no approaching automobile, and so she proceeded to cross the road to the eastern sidewalk; that she crossed in a normal walk, and that when she was within only a step or two from the eastern curb she "looked up" and saw something black right at her, and then knew nothing more.

The testimony of Virginia Thress is to the effect that Margaret looked from around the back of the street car before starting to cross the roadway, and that she crossed it walking in a normal way; that she (Virginia) also peeped up the street to the south from behind the street car, and that she saw an automobile coming toward her on her right (i. e. from the south), coming "awful fast," the right front fender of which struck Margaret before she had gained the curb; that when she (Virginia) saw the automobile she stopped and did not go out into the path of the automobile; but when it struck her sister, the plaintiff, she tried to grab her, and it was then that she, Virginia, was hit by it just as she stepped out from behind the street car.

On the other hand defendant's witnesses, Hopper and Weaver, testify that the plaintiff ran out from behind the street car right in front of Mr. Hackler's car; and Mrs. Wingfield, introduced as a witness by the defendant, who was sitting on her porch on the west side of Grandin road,

testifies: "It was sprinkling rain; and the little child got off the car and kinder ducked her head and ran right around the car when it stopped; and as she ran around the car the automobile came down on the other side of the car" and hit her. Though Mrs. Wingfield testifies that she saw two children get off the car, she says that she saw only one child hit by the car, and that this child was struck by the left-hand side of the automobile. This identifies the child she saw hit by the automobile as Virginia; and it would appear from her testimony that when she says she saw the child duck her head and run around the street car, she is also referring to Virginia.

The plaintiff's evidence fixes the speed at which Mr. Hackler was driving as between twenty-five and thirty miles an hour. Virginia Thress testifies that she peeped from behind the street car and saw the automobile approaching and it was coming "awful fast." Plaintiff's witness Fralin testifies that just after he saw these children get off the street car, he looked to the south and saw an automobile coming north on Grandin road; that the automobile was then about opposite Kensington avenue, which is about 226 feet south of Otterview avenue; that this automobile came on down Grandin road and passed out of his sight behind the standing street car; and that it was traveling between twenty-five and thirty miles an hour. While Mr. Fralin does not testify that this automobile was the car driven by Mr. Hackler, from the evidence in this case it is a necessary inference that this automobile was the automobile driven by Mr. Hackler which struck these children.

On the other hand, the witness for the defendant put the speed at which Mr. Hackler was driving at from eight to fifteen miles an hour. George Hopper testifies that he saw Mr. Hackler's car from the time it got within about seventy-five feet of Otterview avenue until it struck the plaintiff,

and that it was going between twelve and fifteen miles an hour. Beckner, who testifies that he waited for Mr. Hackler's car to pass the mouth of Maiden lane and then drove from Maiden lane across Grandin road into Otterview avenue, says that when Mr. Hackler crossed the intersection of Maiden lane and Grandin road he was not driving over twelve miles an hour. H. O. Weaver, who was sitting in the car parked in front of Clore's Pharmacy, testifies that when Mr. Hackler passed his car he was making about eight or ten miles an hour.

The testimony shows that Mr. Hackler stopped his car within thirty feet of the rear of the street car and within a few feet of the place at which the plaintiff was picked up. The plaintiff's witness, Fralin, says Mr. Hackler stopped his car about thirty feet in rear of the street car. The defendant's witnesses put the distance at less than thirty feet.

The only obstructions in Grandin road which could have interfered with or obstructed the view of these children of the approaching automobile or the view of Mr. Hackler of these children were the standing street car, eight feet wide, from which these children had alighted and the automobile, approximately six feet wide, parked at the curb in front of Clore's Pharmacy.

The only evidence in the record as to the portion of the street on which Hackler was driving as he approached the point of the accident is that of George Hopper, a witness introduced by the defendant. He testifies that he saw Mr. Hackler's car from the time it reached a point seventy-five feet south of the southeast corner of Otterview avenue and Grandin road until it struck the plaintiff; that Mr. Hackler was driving on the right-hand (east) side of the road, "where anybody would drive not to hit the curb," and that when he passed the automobile parked in front of Clore's Pharmacy "he did not have to go out in the car tracks to do that." A person driving north on Grandin

road and not in the car tracks, or so close to the curb as to have been screened by the automobile parked in front of Clore's Pharmacy, would have had a view of the street between the street car and the east curb for a much longer distance than sixty feet; but, under any view of the evidence, Mr. Hackler had an unobstructed view of the whole width of the street between the standing street car and the eastern curb for at least sixty feet before he struck the plaintiff.

Mr. Hackler was driving a 1925 model Cadillac touring car, equipped with two-wheel brakes. Defendant's witness, Bradley, testifies that the standard of adjustment for the brakes of such an automobile is to stop in twenty feet going at ten miles an hour, and in thirty feet going at fifteen miles an hour; that considering the fact that the street was wet from rain and the car going down about a four and one-half per cent grade would have a tendency to increase the distances in which properly adjusted brakes would stop the car; and that under the conditions then existing if Hackler stopped his car in thirty feet after he applied his brakes he would estimate that he was going twelve miles an hour.

There is no evidence in the record to show when or where Mr. Hackler applied his brakes, or began to make any effort to slow down, or that he gave any warning signal before he struck the plaintiff.

Though the testimony for the defendant shows that Mr. Hackler's daughter and another woman were on the front seat with him at the time of the accident, none of them testified in this case, and there is no evidence to show that any of them were unavailable.

The jury were taken to the scene of the accident and had the advantage of a view in interpreting the evidence relating to the topography of the streets and the adjacent territory, the location of physical objects, the points from which the several witnesses saw the things to which they testified,

and the field of vision of Mr. Hackler as he approached the point of the accident and of the plaintiff as she emerged from behind the street car and proceeded across the street.

The vital question in the case is whether the plaintiff walked from behind the street car towards the eastern curb, or ran out from behind the street car just in front of the oncoming automobile, and on this point the evidence is conflicting.

██ ██ Accepting, as we must, in considering a motion to set aside the verdict as contrary to the evidence, the testimony of the plaintiff and her sister that the plaintiff walked around the rear of the street car and across the street in a normal walk and had almost reached the eastern curb before she was hit, and the testimony of plaintiff's witnesses which tend to show that the defendant was driving at from twenty-five to thirty miles an hour, and considering the fact that the defendant had an unobstructed view of the street between the street car and the eastern curb for at least sixty feet, and probably much more, before he reached the point of the accident, we think it cannot be said that there is no evidence in the record to sustain a finding by the jury that the defendant was guilty of negligence in that he was not keeping what was, under all the surrounding facts and circumstances, a proper lookout, and that if he had been keeping such a lookout he would have seen this child crossing the street, in apparent unconsciousness of her danger, in time to have slowed down sufficiently or to have stopped in time to have avoided injuring her.

██ Negligence may be proved by circumstantial evidence. Where the circumstances proved are such as to point by a fair and reasonable inference to the conclusion that the defendant was guilty of negligence, they are sufficient to take the case out of the realm of conjecture and into the field of legitimate inference, and to support

a finding by the jury that the defendant was guilty of negligence. *National Biscuit Co.* v. *Rose Litzky* (C. C. A.), 22 F. (2d) 939, 56 A. L. R. 853; *Cobb* v. *Twitchell*, 91 Fla. 539, 108 So. 186, 45 A. L. R. 865; *Berkley St. R. Co.* v. *Simpson*, 106 Va. 548, at p. 550, 56 S. E. 331; *Jankey* v. *Hope Nat. Gas Co.*, 98 W. Va. 412, at p. 417, 127 S. E. 199.

■ In passing upon a motion to set aside a verdict because the evidence is insufficient to sustain the verdict, the guiding principle for the court is not what it may think the jury ought to have done, or what the court may think it would have done had it been sitting as a jury in the case, but whether as reasonable men the jury could have found such a verdict upon the evidence. If this question can be answered in the affirmative the verdict of the jury should be sustained.

Applying these principles, we are of opinion the court erred in setting aside the verdict of the jury. The judgment of the court will be reversed, and final judgment here entered for the plaintiff on the verdict of the jury.

*Reversed.*