# Richmond

WILLIAM J. FILER, ET ALS. V. JACK MCNAIR, AN INFANT, ETC.

March 24, 1932.

Present, Campbell, C. J., and Holt, Epes, Gregory and Chinn, JJ.

The opinion states the case.

*Sinnott, May & Leaman,* for the plaintiffs in error.

*K. L. Woody* and *A. L. Jones,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

This is an action brought by Jack McNair, an infant who sues by his father and next friend, to recover damages for injuries suffered by him on April 9, 1929. He has obtained a verdict for $8,000.00 which was confirmed by the trial court. From that judgment defendants seek relief.

The Maytag Company manufactures washing machines, and sells its product, not direct to ultimate purchasers, but to dealers who have exclusive agencies for designated territories—in this case, to William J. Filer and Robert Filer, partners trading as Richmond Maytag Company.

This parent corporation does a national and extensive business, and has sold through the Richmond company alone over 1,500 machines. They are in common use.

J. L. Gaitley is an employee of the Richmond company, working on a commission basis, and has been so employed for about two years. Beyond the case in judgment, none of the witnesses know of but two accidents of like character.

The machine itself consists of a tub, or washer, in which clothes are cleaned. Attached to its back as a part of it is the wringer, consisting of two rubber rollers, through which the wet clothes are passed. Both of them are driven by electric power, and by a switching device may be made to work separately or together.

Mr. Gaitley believed the McNairs to be possible purchasers, and finally secured permission to bring one of the machines to their home for demonstration, and did bring it around at seven o'clock on the morning of May 9, 1929. With the aid of two older McNair boys, he put it in the bathroom and made the necessary power connection through an electric socket over the bath-tub, five or six feet above the floor.

That demonstration might be made, he was given some soiled clothes to wash. When the laundering of one lot had been completed Mrs. McNair came in and took them out in the back yard to dry. Later Mr. McNair also came into the bath-room, stood there for a little while, and then followed his wife into the yard. In a short time Gaitley followed him. Both Mr. McNair and Mrs. McNair say that the wringer was working when they left. Clothes that had been washed had been also wrung, and so there was then no necessity for its continued operation. Gaitley, as we have seen, followed Mr. McNair from the bath-room. He said that the washer was then running and at work on another lot of clothes, but that the wringer was not, and that the switch which controlled it stood in neutral. He also said that when the wringer was in use the rollers were turning in a direction which made it impossible for one standing by or in front of the tub to catch his fingers

in them. The switch, which he said was then standing in neutral, governed the direction in which they revolved.

Jack McNair, the plaintiff, was at that time eight years and five months old, was a child of fair intelligence, and had been assigned to the third grade in the public school. He had an impediment in his speech, and when testifying his mother sat by him and repeated his answers to the jury. In other words, he was an ordinary boy between eight and nine years old.

When Gaitley came to the home he was still in bed and probably asleep. In any event, he went into the bathroom a few minutes after Gaitley left it, and in a little while was hurt, and severely hurt. No complaint is made as to the amount of the verdict.

Jack said that when he went into the room the rollers were in motion. Either he or Gaitley must be mistaken. It is impossible to reconcile their testimony. The jury has accepted Jack's statement, as it had a right to do. We must take it as true that the wringer was then working. He placed his arm against the rollers. It was drawn in by them and held until his outcries brought relief. Gaitley ran back and cut off the power. This boy has also said that he touched no part of the machine before his arm was caught up. If he was correct in this he of course did not touch the switch.

There is evidence to show that Gaitley knew this child was in the home; that these wringers were running and were dangerous if it undertook to play with them. He further said that in such circumstances they should not have been left in motion. That is to say, the substance of his testimony is that it would have been negligent for him to have left these rollers running had he known that Jack was about. He did say that they were, as a matter of fact, not running. The jury here did not follow him.

Was it negligent for Gaitley to go out of the house and leave the rollers running?

■ Negligence lies in the omission of due care in the performance of some duty. Want of ordinary care or of reasonable prudence must appear. These are not arbitrary definitions but are highly elastic, and vary with the facts to which they are applied. *Boggs* v. *Plybon*, 157 Va. 30, 160 S. E. 77; *Price* v. *Burton*, 155 Va. 229, 154 S. E. 499; *Norfolk & W. Ry. Co.* v. *Mace*, 151 Va. 458, 145 S. E. 362; *Grand Trunk Ry. Co.* v. *Ives*, 144 U. S. 408, 417, 12 S. Ct. 679, 683, 36 L. Ed. 485.

■ In *Morris* v. *Peyton*, 148 Va. 812, 139 S. E. 500, 504, Crump, P., cited with approval this statement of Judge Burks, made in *Chesapeake & Ohio Ry. Co.* v. *Allen*, 137 Va. 522, 120 S. E. 157, 158: "Courts constantly have to refer to juries the question of what is reasonable conduct, or reasonable prudence, under all the circumstances of the case, with no other guide than their own judgment and conclusion as reasonable men."

■ Negligence is usually a question for the jury, and should be taken from it only when there is no real conflict of evidence on material matters, and when from facts established reasonable men should not differ as to conclusions to be drawn. A verdict must stand "unless there is a plain deviation from the evidence or it is palpable the jury have not drawn a correct inference from these facts as certified." *Richmond & Danville R. R. Co.* v. *Medley*, 75 Va. 499, 40 Am. Rep. 734; *Blair & Hoge* v. *Wilson*, 28 Gratt. (69 Va.) 165; *Carrington* v. *Ficklin's Ex'rs*, 32 Gratt. (73 Va.) 670; *Western Union Tel. Co.* v. *Virginia Paper Co.*, 87 Va. 418, 12 S. E. 755; *Nelson* v. *C. & O. Ry. Co.*, 88 Va. 971, 14 S. E. 838, 15 L. R. A. 583; *New York, P. & N. Ry. Co.* v. *Thomas*, 92 Va. 606, 24 S. E. 264; *Norfolk* v. *Anthony*, 117 Va. 777, 86 S. E. 68; *Realty Co.* v. *Burcum*, 129 Va. 466, 106 S. E. 375; *Payne* v. *Brown*, 133 Va. 222, 112 S. E. 833; *Stanley* v. *Tomlin*, 143 Va. 187, 129 S. E. 379; *Atlantic Coast Line R. R. Co.* v. *Wheeler*, 147 Va. 1, 132 S. E. 517,

136 S. E. 570; *Adkins* v. *Y. M. C. A.*, 149 Va. 193, 141 S. E. 117; *Glass* v. *Huddleston*, 155 Va. 143, 154 S. E. 506. Nothing in section 6365 of the Code affects this rule.

■ Children of tender years may be expected to act heedlessly. As Gaitley said, it is "hard to tell what a child will do." Adequate precautions, where adults are concerned, may as to them be gross negligence. *Price* v. *Burton, supra.* Viewing this case from the standpoint of a verdict confirmed by judgment, it appears that he knew this child was in the home, and he should have known that it would probably come into the bathroom at that hour. He knew that these rollers running were dangerous for the child to play with, and he left them running. We cannot say as a matter of law that no reasonable man would have expected trouble. If the facts be as the jury has found them, Gaitley himself thought that the situtation was dangerous. If they were in accord with his testimony, it was not. There was nothing that the court could do in the premises save submit the case to the jury under proper instructions. *Chesapeake & O. Ry. Co.* v. *Allen, supra.*

Contributory negligence was also properly submitted to the jury.

■ The rule governing the responsibility of children is thus stated by Crump, P., in *Morris* v. *Peyton, supra*, where he said: "In Virginia the settled doctrine in this respect is that a child under seven years of age cannot be guilty of negligence, and that as to children between seven and fourteen years of age, the presumption is they are incapable of exercising care and prudence, and this presumption prevails unless rebutted by sufficient proof to the contrary."

The jury has said by its verdict that this rebuttable presumption has not been overborne. We must here also abide by its finding.

The doctrine of attractive nuisances, or of "The Turntable Cases," does not obtain in this State, and there is no

occasion to invoke it. *Walker* v. *Potomac, etc., R. Co.*, 105 Va. 226, 53 S. E. 113, 4. L. R. A. (N. S.) 80, 115 Am. St. Rep. 871, 8 Ann. Cas. 862. The plaintiff was not a trespasser, and he was not present by any constructive invitation, but was where he had a right to be and where he might have been expected to be.

■ The defendant's liability grows out of primary negligence. Almost without exception it may be said to be dangerous to leave unguarded machinery running where unattended children are in the habit of going. Certainly, it was dangerous in the instant case as results have amply shown.

We find no error in the instructions, or in the verdict and judgment. It is therefore affirmed.

*Affirmed.*

EPES, J., dissenting.

This is a case in which a boy between eight and nine years old had his hand and forearm seriously injured by getting it caught between the rollers of a wringer of a Maytag washing machine, model 90. Serious injury to a child, particularly one which will be permanent in its effect, always excites our sympathy, but this appeal to our sympathy can have no proper place in the determination of this case.

There are three points of difference between the views expressed by the court in its opinion and the view which I take of this case.

(1) I think that the undisputed physical facts show that it is very highly improbable, if indeed not impossible, that the injury to this boy came about in the way in which he says it did. There must have been some intentional tampering with this machine by him. This destroys, certainly to a large extent, the credibility of his testimony as to what he did and as to how he was injured.

(2) I think that the testimony of Gaitley may not fairly

be construed to be an admission by him that he was guilty of any negligence. He does say that had he known this boy was going to come into the bathroom he would not have left any part of the machine running. But the question is not whether he could, or would, have taken so great precaution as to make it impossible for this boy to get himself hurt with this machine, or not, if he had known he was coming into the bathroom; but whether he committed an act of negligence in doing what he did do. But further than this, it is not what Gaitley may, or may not, have thought about this matter that is determinative of this case.

(3) However, the fundamental difference, as I see it, is this. The court is of the opinion that this washing machine when in operation was an inherently dangerous instrumentality for use where an eight year old boy could have access to it. I am of opinion that it was not.

This washing machine was not a machine the mechanism and moving parts of which were unguarded. All its working parts were carefully guarded; and the rubber rollers between which this boy's hand was caught were so carefully guarded that there was no way for him to accidentally get his hand caught between them. He must have intentionally inserted or thrust his fingers between them. The machine was an ordinary household appliance in use in thousands of homes throughout America, and, I think, was no more dangerous than many other common household appliances in daily use in homes all over the country.

There is no magic in the word "machine" to constitute a thing an inherently dangerous instrumentality, and the only evidence which in my opinion may even be said to tend to show that this machine was a dangerous instrumentality is the fact that this boy on this occasion succeeded in getting himself injured while tampering with it. But the mere fact that a normal eight year old boy has gotten hurt while playing with a thing does not prove that it was an

inherently dangerous instrumentality to leave where he could have access to it.

Take for example the homely example of a horse or a dog. It is well known that a horse is apt to kick if you pull his tail and a dog to bite if you step on his tail. Boys of about eight years of age have always seemed to have a predilection for doing both these things, and many have been kicked or bitten when they did so. But I take it that no court would hold a farmer guilty of negligence because when on a visit to his neighbor's house he had tied his horse to the neighbor's rack or left his dog in the neighbor's yard, even though he saw the neighbor's normal eight year old boy playing in the yard, unless the horse or dog was known to be vicious. A washing machine may be somewhat more novel to those of us who have reached or passed middle age than a horse or a dog; but in my opinion either a horse or a dog is an inherently more dangerous instrumentality than this washing machine, and power is always on in a horse or a dog.

There is a material difference between the consideration to be given the intelligence, knowledge and capacity for care of a normal eight year old boy when considering whether the boy was guilty of contributory negligence, and the consideration to be given these factors when considering the question whether a person who he alleges has injured him was guilty of primary negligence. It is said that a boy between seven and fourteen is presumed to be incapable of contributory negligence, until the contrary is proven. But in considering whether a person, who has left some instrumentality where such a boy could have access to it, has been guilty of primary negligence, it is not presumed that the boy was incapable of exercising any degree of care or prudence. It is a matter of common knowledge that a normal eight year old boy has very considerable intelligence and knowledge and is capable of exercising a very

considerable degree of care and prudence. If it were not so, boys could not survive in their every day environment. Courts are not, and do not assume to be, more ignorant than the average man or woman.

I think that, as a matter of law, Gaitley was not guilty of negligence unless this washing machine when left running was an inherently dangerous instrumentality to leave unattended in a room into which a normal eight year old boy might come. I am further of opinion that the evidence is, as a matter of law, insufficient to prove that it was an inherently dangerous instrumentality even when left running; and that, on the contrary, the evidence shows that it was not an inherently dangerous instrumentality within the meaning of the rule that it is negligence to leave an inherently dangerous instrumentality where a child may lawfully have access to it.

I think the case should be reversed, and final judgment here entered for the plaintiffs in error.