# Wytheville

W. T. WYNN V. WILBERT J. GANDY, JR., ETC.

June 8, 1938.

Present, Holt, Hudgins, Browning, Eggleston
and Spratley, JJ.

The opinion states the case.

*Hughes, Little & Seawell,* for the plaintiff in error.

*Frank A. Kearney,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

The defendant in the trial court, who is the plaintiff in error here, was the driver of a school bus which was connected with the George Wythe public school in Elizabeth City county, Virginia. On the 5th day of January, 1937, he drove his bus from a filling station, where he had had it serviced, toward the school building for the purpose of loading it with children, whose homes were their destinations. As he was proceeding slowly along the street in front of his

own home, which is opposite the entrance to the school building, school children were crowding around and running after the moving bus for the purpose of getting on it. The plaintiff was crowded and shoved by other children which caused him to try to catch a handle on the bus to save himself, but he failed in this effort and fell and the right rear wheel passed over him, injuring him to such extent that he died a short while after the trial of his case.

This action was instituted against the defendant by the father of the plaintiff, as his next friend, he being an infant who became thirteen years old shortly after the accident.

The jury rendered a verdict for the plaintiff, awarding him damages in the sum of $10,000, which was confirmed by the judgment of the trial court. The plaintiff, of course, is entitled to have the facts, where there is conflict, stated and accepted in the light most favorable to himself, which will accord with the testimony elicited from his witnesses.

The plaintiff and Mrs. Bruce McIntyre, who happened to be at the school on the afternoon in question for the purpose of taking her two children, who were students there, to their home, testified as to the plaintiff being shoved and crowded, the latter saying on her examination in chief as follows:

"Well, when Mr. Wynn drove up, he was driving very slowly, very slow, and when he got there the children practically had all gotten on the right-hand side of the bus, and when Mr. Wynn passed the children they were all on that side, practically, and just a few on this side. (Indicating.) And then I saw this crowd just pushing, they were pushing terribly, and I saw three children go down,—two girls and this boy, but I didn't know it was Wilbert at that time; and then I saw this boy's legs lying right in front of the back wheels of the bus, and I knew they went over him, and as they did, I jumped out of the car, and a second or so Mr. Wynn brought the bus to a standstill. I went to the boy, and some of them helped me take the boy up, and I got as far as the running board and Mr. Wynn helped me put him

in my car, and Mr. Wynn asked me if I would take him to the hospital."

The defendant frankly admitted that just such a condition as that detailed by Mrs. McIntyre occurred almost every day.

The facts, as we have to accept them, justifies the statement that there are a number of major circumstances which stand out boldly in this case and induce the conclusion that the issues here are for the determination of the jury. These circumstances are:

1st. The defendant was admittedly late in arriving at the school with the bus.

2nd. The school had been dismissed for the day a sufficient length of time for the children to wander and become scattered. They were milling around.

3rd. The bus was sufficiently large to accommodate and did accommodate from ninety to 112 children, ranging in age from seven to fifteen years, which heightened the danger of its passage along a way that was more or less crowded with children of rather immature minds.

4th. The defendant, on the afternoon in question, changed his method of approaching the school building for the purpose of taking on his passengers. His practice was to stop in front of the school and not on the opposite side of the street. The presence of the bus proceeding slowly on the opposite side of the street was a lure to the children. Their childish impulses caused a portion of them to go across the street so that, in the language of some of the witnesses, they were on both sides of the street and in the street, so that it may be said that the immediate area was alive with running, rollicking and excited children in a race as to which could get on the bus first.

5th. It had very recently rained and naturally the street presented a condition which was conducive to a person losing his foothold.

6th. The defendant testified that, occupying the driver's seat, he could not see persons at either side after the front of the bus had passed such persons. In this connection it will be noted that the bodies of large buses of this type are

extended on both sides and, in this case, it had to be so constructed in order to accommodate the number of children served by it.

7th. The defendant testified that he had had trouble with the children, on other occasions, caused by their eagerness to get on his bus first, and thus he was put on notice that there might be repetitions of this at any time.

In view of the presence of these incidents, fairly and reasonably drawn from the facts, we reach the conclusion that the judgment of the trial court was right. The setting was a proclamation of its hazards and the jury was well within its province in taking the failure of the defendant to bring his bus to a stop before the accident to be negligence.

See *Price* v. *Burton,* 155 Va. 229, 154 S. E. 499; *Ball* v. *Witten,* 155 Va. 40, 154 S. E. 547; *Thress* v. *Hackler,* 155 Va. 389, 154 S. E. 502; *Wash* v. *Holland,* 166 Va. 45, 183 S. E. 236.

In the case of *Ball* v. *Witten, supra,* this court said (page 549): "Under the surroundings then existing, if the defendant desired to pass between the children when the space between them was only thirteen to fifteen feet, his obvious duty was, on approaching them, to bring his automobile under complete control and to exercise the care the danger of the situation demanded. Knowing, a sufficient interval in advance, that the children were of immature minds and could not take care of themselves, that they would likely commit irresponsible acts, and that they were in a perilous position, he should have proceeded with his automobile under such control that, if necessary to avoid injury, he could have brought it to a stop. If stopping was the only effectual means he had at his disposal to avoid the injury, then he should have exercised that means."

In *Morris* v. *Peyton,* 148 Va. 812, 139 S. E. 500, 504, Judge Crump cited with approval the statement of Judge Burks made in the case of *Chesapeake & Ohio Railway Co.* v. *Allen,* 137 Va. 516, 522, 120 S. E. 157, 158: "Courts constantly have to refer to juries the question of what is reasonable conduct, or reasonable prudence, under all the circum-

stances of the case, with no other guide than their own judgment and conclusion as reasonable men."

We said in the case of *Filer* v. *McNair*, 158 Va. 88, 92, 163 S. E. 335, 337: "Negligence is usually a question for the jury, and should be taken from it only when there is no real conflict of evidence on material matters, and when from facts established reasonable men should not differ as to conclusions to be drawn. A verdict must stand 'unless there is a plain deviation from the evidence, or it is palpable the jury have not drawn a correct inference from these facts as certified.' "

We cannot say that, from the facts established in this case, reasonable men would not differ as to the conclusions to be drawn from them. We cannot say that the jury was without evidence upon which to base their verdict.

It remains for us to consider the contention of the defendant that there can be no liability on him because he was operating a bus for the school board of Elizabeth City county, which was used for the transportation of children, which use was an act on behalf of a governmental agency, for which neither it nor the driver could be held liable in an action for tort. We do not think that this position is sound.

It seems to be well settled that public officers are liable for injury which is the result of their negligence in the performance of duties which do not involve judgment or discretion in their performance but which are purely ministerial. *Sawyer* v. *Corse*, 17 Gratt. (58 Va.) 230, 233, 99 Am. Dec. 445; *Clark* v. *Kelly*, 101 W. Va. 650, 133 S. E. 365, 46 A. L. R. 799; *Strickfaden* v. *Greencreek Highway District*, 42 Idaho 738, 248 P. 456, 49 A. L. R. 1057.

The record contains a very clear, terse and conclusive opinion of the learned judge of the trial court, from which we quote as follows: "The question of the contributory negligence of the plaintiff, a boy just short of thirteen years of age, was submitted to the jury and apparently passed upon by the jury. They either reached the conclusion that he was not of sufficient age and discretion to be guilty of contributory negligence, or on the other hand, they

chose to believe the witnesses who testified that he was pushed under the truck.

"I am of the opinion that the case was a proper one for the jury to pass upon, and that the instructions properly set forth the law; therefore, I overrule the motion to set aside the verdict."

We affirm the judgment of the trial court.

*Affirmed.*