# Richmond

## AMERICAN TOBACCO COMPANY, INC., ETC. v. CAROLINE HARRISON, AN INFANT, ETC.

October 11, 1943.

Record No. 2690.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Alexander H. Sands*, for the plaintiff in error.

*Parrish, Butcher & Parrish*, for the defendant in error.

BROWNING, J., delivered the opinion of the court.

This controversy grows out of an automobile accident. The parties will be generally referred to as they were related in the trial court, though sometimes as individuals.

The plaintiff is the nine year old daughter of Mrs. Mildred Harrison, and she lived with her mother and grandmother at 1615 Park Avenue, in the city of Richmond. Her grandmother is Mrs. Caroline Powell Williams. The home is situated on the south side of the Avenue between Lombardy Street on the east and Vine Street on the west.

The accident happened on March 11, 1941, at about 1:00 o'clock p. m. The plaintiff was returning to Collegiate School, which is on Monument Avenue, after having had lunch at her home during the mid-day recess. She was struck by a truck belonging to the defendant, the American Tobacco Company, which was being operated by the defendant, John P. Bradshaw, Jr., an employee of the company. The child was permanently injured. Bradshaw was driving eastwardly on the south side of the street. He was traveling at a lawful rate of speed. His automobile was mechanically in good order and he brought it to a stop almost immediately after the impact. The sole question at issue is whether he was negligent in not keeping a proper lookout, which would have enabled him to observe the child and avoid striking her.

There were two suits. One brought by the mother of the child alleging damages on account of liabilities for hospital, doctors and nurses charges, etc., and the other by the infant, by her next friend, for damages sustained by reason of her injuries. These suits were consolidated and tried together. There were two trials, the first resulted in a disagreement of the jury. In the second there was a verdict in favor of the defendants in the mother's case and in the child's case there was a verdict for $4,000.00 in favor of the

plaintiff. Both verdicts were approved by the trial court. We are now concerned only with the latter verdict and judgment.

As we have so frequently said, the prevailing party has the right to have the facts stated and considered in the light most favorable to him.

The defendant, Bradshaw, turned in to Park Avenue from Vine Street and was proceeding east on the south side when the plaintiff ran from her home, 1615, down the steps and down the sidewalk and then into the street about 12 feet where he struck her.

The defense is threefold. First, that Bradshaw's vision was obscured by the presence of parked automobiles at or near the point of the accident, which prevented him from seeing the plaintiff, second, that the plaintiff herself was negligent in running into his automobile, and third, that the negligence of the plaintiff's mother in permitting the child, in violation of the law, to cross the street between intersections and that such negligence is imputed to the child.

The first point of defense, we think, comprehends the important feature of the case. The evidence is conflicting as to whether there were parked cars so located as to have had the effect attributed to them.

J. M. Dolan, a witness introduced by the plaintiff, was driving west on Park Avenue and had gone about ten feet west of Lombardy Street, which was in the opposite direction to that of Bradshaw. He saw the child descend the steps and pursue her way to the point of the accident. He said his eyes were focused on her from the time he first saw her to the moment of the tragedy. She ran all of the way. He saw her hurtled in the air. He said when he started from Lombardy Street west his was the only car in that block of Park Avenue, that there was a car parked west of the child on the south side of the street. Mrs. Katherine Bemiss McGuire, who lives at 1622 Park Avenue, diagonally across the street from the plaintiff's home, said that she was looking from the window of the second floor front room of

her house, the sound of the impact having attracted her attention, and she saw the child on her hands and knees in the street; that there was a parked car in front of Bishop Denny's house, which is number 1619, on the south side of the street and she only noticed the one car on that side of the street. It will be noted that Bishop Denny's house is on the southwest corner of the block, where Vine Street intersects with Park Avenue, at which intersection Bradshaw turned east and which is approximately 168 feet from the point of the accident.

Gaynelle Christian, a domestic servant, employed in the Tilghman home at 1612 Park Avenue, was looking from the living room front window to watch a Tilghman child which she was minding, and she saw the plaintiff come out of the door of her home. This witness moved 8 or 10 feet to the front door to speak to her charge when she heard a sound as though something were falling on the pavement and she saw the child lying in the gutter with her head towards the curb between numbers 1611 and 1613. She saw her picked up and put in the defendant's truck and then she walked across to the Harrison home to inform the child's grandmother of the accident. This question was asked her:

Q. "Will you please state whether or not as you crossed from 1612 to 1615 there was any car parked in the space you walked up to 1615 on the southern side of Park Avenue?"

A. "No sir, there was absolutely nothing because I couldn't have gone across the street at the angle I started if there had been a car right there because I would have to see it."

Later she said, when asked if she saw any car parked west of 1615, that she did not remember seeing any.

Maud Pierce was a colored servant at the plaintiff's home. She answered the door bell when the Christian woman rang it and she said that she was positive that no car or cars were parked in front of 1615 or on down the street.

Now there was a definite conflict between this testimony and that of the defendants on the very crucial fact of the presence of parked cars and their location.

The defendants urge that the witness, Nuckols, a laundry truck driver, testified positively that there was a parked car in front of 1615 or where the child was struck and that there was one down close to the corner of Lombardy Street. His statement, however, "but it was a good vacant space between this car and the other car" impairs the strength of the testimony so far as the effect they attribute to it is concerned.

We are mindful also that the witness, Weldon Price, who was a servant in the Lewis boarding house, on the corner of Lombardy Street, l o o k i n g obliquely from the din-ing room window on the Park Avenue side, said that there were three cars parked on the south side of Park Avenue and he fixes them in front of each other, one at 1611 and one at 1,613 and one he said was "almost up to Bishop Denny's."

 We mention this testimony in some detail because counsel for the defendants insist so strenuously that there is only one way out of all this and that is the way he points out for the defendants, and which the jury just would not see. He urges that the evidence shows that the defendants were absolutely not guilty of any primary neg-ligence. We must emphasize that the conflict which we have pointed out has been resolved by the jury in favor of the plaintiff. We cannot say that there was not credible evidence upon which their verdict could be based; therefore there is nothing we can do in the absence of fraud, bias or prejudice which, if present, would, of course, vitiate it. The suggestion that the conditions present a picture which might have touched the sympathies of the jury and that this might have been heightened by the manner of its presentation is an imponderable with which we are powerless to deal.

There was evidence, as we have seen, which would war-rant the jury in finding that Bradshaw was negligent in not

having seen the child in time to avoid striking her. We note that he said he never did see her until after the accident.

Assuming that there was a car parked at about the point of the accident, as Nuckols said, and that there was one parked in front of Bishop Denny's residence there was between the two cars clear space of more than a hundred feet which would have enabled Bradshaw to see the child if he had been keeping a proper lookout. At least the jury had the right to so determine. This view of the matter is strengthened when we consider the fact that the child was running from the time she began to descend the steps all the way. It is almost needless to say that a fast moving object attracts attention which would not be the case if the object were static or moving slowly.

The jury doubtless reasoned that if Dolan could see the child from the time she began running to the end, never taking his eyes off of her, when he was further away, it was strange that Bradshaw failed to see her and was thus oblivious of her presence.

The jury evidently was not impressed with the test which was made by the witness Fleet, who said that he could not see persons on the south side of Park Avenue from an automobile in which he was sitting, which was located about the Vine Street intersection, when there were parked automobiles along the south side of the street.

Another established fact which is important is that there was no other moving traffic in the block except Dolan, who had just crossed Lombardy Street.

We have been impressed with the manifest interest of the jury as indicated by the frequent questions which were asked by individual jurors showing their alertness and grasp of important factual points. We quote here a brief portion of the testimony given by Bradshaw:

By Mr. Sands:

Q. "Were there any cars between the place where the child was left—where the accident happened and Lombardy Street, as far as you know, on the south side? Were there

any cars from there down to the corner, as far as you know?"

A. "So far as that I don't know of any cars there."

Q. "Did you see any cars on the side next to the south side between there and Lombardy Street beyond the point where the child was struck?"

A. "I don't recall it, no."

By a Juror:

Q. "In that case how is it you don't recall there and you do recall in the other case?"

A. "Well, I recall when I went back to the aid of the child there were cars parked on the south side of the street."

Q. "But don't recall whether any beyond that point or not? That is vague in your memory? Is that correct?"

A. "What Mr. Sands said where the car was parked to the corner."

Q. "He said from that point all the way down to Lombardy Street, a distance of over a hundred feet."

A. "I know cars were parked on the south side of the street up there at the place of the impact at the time of the accident. As I said before and I say again, it all happened so quickly I didn't take time to stop and count the cars and take the numbers of the houses where they were parked or spaced."

Q. "I think we can well understand a man having had an accident like that was very nervous and excited, but the point I was trying to clear up it has been testified in your presence that there wasn't any car parked along there except one in front of Bishop Denny's home. Now you testified there were cars along there, but you don't recall whether any more down the street or not."

A. "I said there were three or four cars."

Q. "Right along there?"

A. "Yes."

Q. "You know that, but don't know whether any more down the street?"

A. "No sir, whether any more down to the corner of Lombardy, no."

This testimony also shows how vague were Mr. Bradshaw's impressions.

In the case of *Wynn* v. *Gandy*, 170 Va. 590, 197 S. E. 527, we quoted with approval the following statement from the opinion in the case of *Filer* v. *McNair*, 158 Va. 88, 92, 163 S. E. 335, 337: "Negligence is usually a question for the jury, and should be taken from it only when there is no real conflict of evidence on material matters, and when from facts established reasonable men should not differ as to conclusions to be drawn. A verdict must stand 'unless there is a plain deviation from the evidence, or is it palpable the jury have not drawn a correct inference from these facts as certified.'"

We cannot say, from the evidence here, that reasonable men would not differ as to the conclusions to be drawn. We cannot say that there was a plain deviation from the evidence, or that it is palpable that the jury have not drawn a correct inference.

As to the defense that the plaintiff was guilty of negligence we said in the case of *Wash* v. *Holland*, 166 Va. 45, 183 S. E. 236: "The child, being between seven and fourteen years of age, was favored by a rebuttable presumption that she could not be guilty of contributory negligence."

This presumption obtains in favor of the plaintiff and it has not been rebutted.

This question was prominent in the case of *Stanley* v. *Tomlin*, 143 Va. 187, 129 S. E. 379, in which an instruction was offered embodying the principle we are considering. This court in discussing this instruction said:

"The only evidence upon which to base this instruction was brought to light in the cross-examination of the plaintiff who stated that his daughter was nine years of age, had attended school 'some, not much' and was of ordinary intelligence for a child of nine years of age. We do not think this evidence amounted to a rebuttal of the legal presumption that she was not capable of exercising care and prudence. Unless the proof established the fact that the infant was guilty of contributory negligence, of course, the

contributory negligence of the father, if any, could not be imputed to the child."

The verdict of the jury here determined the question as to whether or not the legal presumption had been rebutted. The verdict resolved that the plaintiff was incapable of being guilty of contributory negligence.

The defendants earnestly contend that the negligence of Mrs. Harrison in permitting and acquiescing in the plaintiff's crossing the street between intersections is imputed to the child. This is not the law of Virginia. In the case of *Tugman* v. *Riverside, etc., Cotton Mills,* 144 Va. 473, 132 S. E. 179, this court, after citing a number of cases decided by it, said: "These cases settle the doctrine in this State that, in a suit by an infant to recover damages for a personal injury, the negligence of the parent or other person having custody and care of an infant will not be imputed to the infant."

In the case of *Norfolk & W. R. Co.* v. *Groseclose,* 88 Va. 267, 13 S. E. 454, 29 Am. St. Rep. 718, this was said: "Of course, it is essential to a recovery in any case that negligence on the part of the defendant be shown. But when that is proven in a suit by the child, the parents' negligence is no defense, because it is regarded not as a proximate but as a remote cause of the injury. And the reason lies in the irresponsibility of the child, who, itself being incapable of negligence, cannot authorize it in another. It is not correct to say that the parent is the agent of the child, for the latter cannot appoint an agent. The law confides the care and custody of a child *non sui juris* to the parent, but if this duty be not performed, the fault is the parent's, not the child's. There is no principle, then, in our opinion, upon which the fault of the parent can be imputed to the child. To do so is to deny to the child the protection of the law."

As to the instructions which are made the subjects of error we think they correctly state the law in relation to the facts present subject to this comment. The injection of the last clear chance doctrine into the case would suggest that the trial court thought there was some evidence that

the child was negligent as well as the defendant Bradshaw. We have already rejected that notion but the acceptance of it by the trial court, if error at all, at most, was harmless. We would affirm the case if there had been no such instruction and if there had been no thought of the last clear chance doctrine.

In accordance with what we have said the judgment of the trial court ought to be and is

*Affirmed.*

HUDGINS, J., dissenting.