**Henry James TAYLOR, an infant, who sues by and through his mother and next friend, Gertrude Marie Taylor, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 2489.**

United States District Court
E. D. Virginia,
Alexandria Division.

Jan. 24, 1963.

Elmer B. Gower, Cumberland, Md., for plaintiff.

MacDougal Rice, Asst. U. S. Atty., Alexandria, Va., for defendant.

LEWIS, District Judge.

Henry James Taylor, an infant, through his mother and next friend, seeks damages from the United States for severe personal injuries sustained as a result of his coming in contact with an allegedly unprotected high-voltage transformer near his home at Fort Belvoir, Virginia.

Suit was brought in this court under Chapter 171, Title 28, United States Code, pursuant to an act of the Congress of the United States, approved September 21, 1961, for the relief of Henry James Taylor.[1]

The evidence disclosed that Henry, an infant of seven and one-half years at the time of the accident, was living with his mother at Fort Belvoir, Virginia. His father, Sergeant Major John D. Taylor, was then on duty in Camp Tugo, Greenland. The Taylor home (one of a group assigned to non-commissioned officers) was located adjacent to a wooded area.

In late 1955 or early 1956, the Government contracted with the Walter Truland Corp. to build a transformer sta-

1. Private Law 87–200, 87th Congress, H.R. 4369, 75 Stat. 920.

tion at Fort Belvoir, Virginia, as an adjunct of the DeWitt General Hospital. The station was erected in accordance with plans and specifications, and was turned over to the appropriate officials of Fort Belvoir, April 20, 1956. It was maintained and operated thereafter as a part of the Fort Belvoir physical plant.

The transformer is located on a hill immediately behind (from 150 to 300 feet) DeWitt General Hospital, then being built at Fort Belvoir, Virginia. The site, after being cleared and leveled by flattening out the back of the hill, consisted of natural bank gravel. Upon completion, "the enclosed area" was covered with washed gravel ranging from one to three inches in size. The framework supporting the electrical equipment, including the adjacent shed or building, was installed and erected on a pad, all of which was enclosed by an industrial-type fence. This fence was constructed of steel pipe posts set in concrete at regular intervals and a framework of pipe connecting these posts near their tops, with horizontal bracing pipes about two-thirds the height of the fence at the corners and adjacent to the gate, and covered from the outside with a seven-foot woven wire mesh of a two-inch by two-inch diamond-shaped design. Three spaced strands of barbed wire were stretched on projections of wire above the steel pipe posts. These projections extended outwardly at approximately a forty-five degree angle and upwardly approximately one foot, except that at the gateposts the projections extended vertically above the posts. The total height of the mesh fence with the three strands of barbed wire was approximately eight feet. The fence appeared to be a substantial distance (12 to 20 feet) from the high-voltage equipment. The entrance to the transformer station was through double gates made of the same material and height as the fence. These gates were kept locked at all times.[2]

Henry had been to the "site" on at least two previous occasions. He said he went there because he was curious. He either walked or rode his bike. He had been down there with his parents, both of whom had told him to stay away from the area.

The first time, Henry got inside by climbing over the fence. On the date of the accident, he got in by crawling through a hole he found under the fence. To get under safely, he had to remove some "rocks."

Henry did not state how large the hole was, except to say that he could crawl under the fence after removing some of the rocks. Edward George Schessler, the workman who rescued Henry, observed the hole immediately after the accident. He stated "I don't recall actually just how big it was," "I probably could have crawled underneath it myself." E. R. Leister, Sr., another employee who arrived on the scene shortly after Schessler did, when asked "Was there anything unusual about that fence?" he replied, "Only this one low spot there where it had settled in some way, due to rain or something else. There was a little hole under the fence." When asked "How big or how deep was that hole?" he said, " * * * I didn't measure it, but it wasn't big enough, I don't think, for a grown person to crawl under, but it was large enough for a child to crawl under." Henry's father, Sergeant Major Taylor, expressed the opinion that the hole was the result of erosion.

Roy Ethridge, a playmate of Henry, said he had gotten into the transformer site on a previous occasion by crawling through a hole under the fence.

There was no evidence as to how long this hole had been under the fence or that the Government had any knowledge of its existence, or how much of it was created by the boys in "removing rocks" during the two or three occasions they used the hole as a means of entrance.

2. There was no direct testimony describing the size or type of fence here installed. This description was taken from pictures introduced in evidence.

After gaining entrance to the station, Henry climbed up among the breakers. His burnt clothing was found on top (20 feet) of one of them. He was injured when he got into the high-tension line at the transformer banks, and was removed from these breakers in a badly burned condition from the hips up, requiring extensive plastic surgery in an endeavor to remove the marked amount of contractures in the region of the scapulae and neck. He has been hospitalized approximately 200 days, and will require about 14 additional operations during the next 8 or 10 years in order to be cured (as completely as possible) of the injuries sustained.

The plaintiff seeks recovery from the United States on the ground of negligence. He says the cause of the accident was the failure of the Government to provide a proper barrier around the DeWitt Hospital transformer.

To support a recovery the plaintiff must prove actionable negligence against the Government. This he has not done.

A distributor of electricity must exercise a high degree of care commensurate with the danger involved, to prevent injury to others. See Trimyer v. Norfolk Tallow Company, 192 Va. 776, 66 S.E.2d 441, and cases cited therein.

In response to said duty, the Government built its transformer station in a wooded area some 125 yards from the plaintiff's home. The site was a leveled hillside covered with three inches of washed gravel. It was completely surrounded with a standard industrial-type wire mesh seven-foot fence, topped with three strands of barbed wire. The entrance gates were kept locked at all times. There were no walks, roads, or paths commonly used by the public, leading thereto.

This would be a sufficient compliance with the degree of care required, concedes the plaintiff, had a more mature person, in full possession of his faculties, climbed over or crawled under the fence; but here we have a child of seven and a half years, and the Courts throw a safe-guard around such children to protect them in their childish innocence from the dangerous nature of electricity, of which they have no proper understanding. A greater degree of care is required when the Government knows that children of tender years are accustomed to play at or near its transformer station and are likely to gain access to it, says counsel for the plaintiff.

Gauged by these standards, we still can not say the Government was guilty of negligence which was the proximate cause of plaintiff's injuries.

Although the doctrine of "attractive nuisance" has been repudiated in this jurisdiction, Virginia has held that it was negligence for the owners or occupiers of land to leave on their premises, easily accessible to children of tender years, an instrument, machine, or appliance which contains hidden, concealed, or latent danger when handled by one unfamiliar with its use. Washabaugh v. Northern Virginia Construction Co., 187 Va. 767, 48 S.E.2d 276.

In Haywood v. South Hill Manufacturing Company, 142 Va. 761, 128 S.E. 362, the owner was held negligent for leaving a highly charged uninsulated electric wire within the arm's length of a child who was passing along the sidewalk. A similar holding was held in an explosive case, Daugherty v. Hippchen, 175 Va. 62, 7 S.E.2d 119, where Justice Gregory said "Explosives are equally as deadly as electric current. Both should be guarded and controlled with utmost care and caution, * * *." In Adams v. Virginian Gasoline & Oil Company, 109 W. Va. 631, 156 S.E. 63, it was held that gasoline is a "dangerous substance" and that the owners "must exercise reasonable care to avoid injuring trespassing child whose presence is known or reasonably anticipated." See Gregory v. Lehigh Portland Cement Company, 157 Va. 545, 162 S.E. 881.

"In order for the doctrine to apply, the danger of the instrumentality must not only be hidden or latent, but the instrumentality must be easily accessible to children and in a location where it is

known that children frequently gather." Washabaugh v. Northern Virginia Construction Co., supra.

Here the Government's transformer was not easily accessible to children or in a location where it was known that children frequently gather. To the contrary, the station was substantially hidden in a wooded area to the rear of the DeWitt General Hospital. It could not be seen from the plaintiff's home. There was no evidence that children were known to be in the area, except the statement of the father that "children were allowed to play all over the place."

But this is not enough, says counsel for the plaintiff, the Government's negligence was in permitting and maintaining a depression or hole under the protective fence it had built around the transformer station.

At best, the evidence shows the "hole" to be a small depression or settlement of about seven or eight inches in depth and approximately two feet wide. The plaintiff had to make the hole larger by removing rocks in order to crawl under the fence. How long this hole or depression had been under the fence is left to speculation. Further, there was no evidence that the Government had any knowledge of the existence of this hole prior to the date of the accident. But it does not follow, had the Government known, or been chargeable with knowledge, of this condition, that it should have foreseen that a child would enlarge the depression by removing gravel (rocks) and enter the enclosure to his peril.

In Rieder v. Garfield Manor Corporation, 164 Va. 192, 178 S.E. 677, the Supreme Court of Appeals of Virginia held that the defendant exercised the proper degree of care, as a matter of law, in storing dynamite caps, when a boy broke into the storehouse which was securely fastened and climbed up to a rafter to obtain caps which had been placed out of danger.

In Johnson v. United States, 270 F.2d 488 (9 Cir.), a four and a half year old child gained access to a transformer substation, apparently by climbing over the gate, and while inside the enclosure climbed the metal framework and came in contact with approximately 19,000 volts of electricity. This case arose in Montana where the doctrine of attractive nuisance has long been recognized. The substation there was protected by a fence, substantially the same as here, and the Court held that " * * * 'The construction of the substation fence and gates * * *, provided such safeguards as would prevent injury to a small child of ordinary and normal instincts, habits and training, and such as would be constructed by an ordinarily prudent person taking into consideration all of the risks involved.' "

The Court finds the Government used reasonable care, under the circumstances of this case, to make its "transformer station" secure against the entry of children; and is not chargeable with negligence because it did not so secure the premises as to make it impossible for a seven and one-half year old boy to enlarge a hole (settlement) under the fence by removing gravel (rocks) and enter the station.

The cases relied upon by counsel for the plaintiff do not require a different conclusion in view of their differing facts.

Thus holding the Government is not guilty of negligence proximately causing the plaintiff's injuries, it is not necessary that the Court determine whether Henry was guilty of contributory negligence in climbing up on the transformer banks after he had been told by his parents to stay away from the area and after he had been told by his playmate, on the day of the accident, "that he shouldn't climb up there."

Judgment will be for the Government and the suit dismissed.

Counsel for the defendant will prepare an appropriate order, submit it to counsel for the plaintiff for approval as to form, and it will be accordingly entered.